May it please the Court, opposing counsel. Your Honors, we're here today because there occurred at Mr. Hugs' trial a constructive amendment to the charging document, to the indictment in this case. I would like to begin my argument by stressing that this Court does indeed have jurisdiction to review the constructive amendment that actually occurred in this case. Now, the Government does argue that this Court is unable to review the constructive amendment because of the invited error doctrine. In support of its argument, the Government cites two cases, United States v. Stauffer and United States v. Smith. However, both of those cases have been modified by United States v. Alano, which this Circuit has recognized on at least two occasions, first in United States v. Perez and again in United States v. Byrd. Essentially, what this Court recognizes is that review is allowed even if, as happened in Mr. Hugs' case, there was an accident or an inadvertent mistake on the part of the defense, which occurred at trial. There's a distinct – in Byrd and Perez, this Court distinguishes between a waiver of a right – excuse me – between the waiver of a right and affirmatively relinquishing that right. In this case, Mr. Hugs did not affirmatively relinquish his right to have his case reviewed by the grand jury and then have the exact same elements and charges presented to him. In fact, this was an inadvertent and unintentional mistake, the likes of which was presented to this Court in United States v. Perez and United States v. Byrd. Accordingly, this issue of constructive amendment to the indictment is, in fact, is, in fact, reviewable by this Court. Moving on to the constructive amendment now. The indictment charges Mr. Hugs in this case with the unlawful killing of Thurin Oldelk without malice in the commission of an unlawful act not amounting to a felony. Now, the jury instructions expand upon the conduct that is alleged by indictment in Mr. Hugs' case. The jury instructions read that the defendant committed an unlawful act, not a felony. And then goes on to say, or committed a lawful act done either in an unlawful manner or with wanton or reckless disregard to human life, which might produce death. This description is not contained in the indictment. This description was not approved by the grand jury and, as such, presents a grand jury Fifth Amendment violation in Mr. Hugs' case. In support of its argument that a constructive amendment did not actually occur in this case, the government relies on United States v. Keith. In that case, this Court reversed a conviction for involuntary manslaughter because the indictment failed to allege two essential elements of the offense in the charging document. In that case, the indictment charged the defendant was driving without due caution and circumspection, which connotes – which this Court found connotes only simple negligence. That is not enough for an involuntary manslaughter conviction. This Court reversed the conviction based upon the fact that it said the government must prove in an involuntary manslaughter conviction that the defendant acted with gross negligence. Gross negligence, again, is an element that was not charged in this indictment. It was not presented to the grand jury. And although Judge Shandstrom, the district judge Shandstrom, read that jury's instruction at trial, it went beyond the simple charges that were contained in the indictment. Like – Did it have any impact? I'm sorry, Your Honor. Did that have any impact on this trial? Was your client prejudiced as a result? And, Your Honor, I think that's the critical question here, and I believe that he was. The reason being is that we don't know what happened in that jury room. We know that at trial, the government's expert, the Montana Highway Patrol officer who made his determination as to who was driving at the time of the accident, was effectively impeached by defense counsel, the counsel of record. In addition, defense counsel presented his own expert testimony, which suggested that Mr. Huggs, in fact, was not the driver. In addition, at trial, there was a dispute over the actual blood alcohol content that Mr. Huggs had in the system. I understand defenses were offered, but how did those interplay with the alleged variances or alleged additions to the indictment? Well, because the additions to the indictment lessened the government's burden of proof, such that when the – when the petite jury was reviewing this case and applying the facts and circumstances of the case to the law as provided by the district court, it had in front of it elements of the offense that were substantially less than those that had been alleged in the indictment. What about Instruction 17? I'm sorry, Your Honor. Instruction 17? Yes, Your Honor. Would you comment on the impact on that? The jury was instructed that the appellant was not on trial for any conduct or offense not charged in the indictment. And that went to the jury, into the jury room. Yes, Your Honor. And I agree, it did go to the jury. And the indictment also was read to the jury. But the problem here is that the judge gave the jury explicit instructions about what the government's burden of proof was at trial. And in those instructions, the description of the government's burden of proof went above and beyond what was alleged in the indictment. In fact, adding terms that lessening the government's burden of proof at trial and adding terms that had not been contained in the charging document. How was the government's burden lessened if the jury was told they could only convict on the basis of the indictment? Well, the jury had in front of it all of these instructions, including the instructions that increased, that expanded upon the elements. Even though the government, even though the jury had the indictment in front of it, it also had this instruction that the district court had given, which went beyond the simple charges in the indictment. It went beyond the fact that all the government had, that what the government had to prove initially at trial, according to the indictment, was that Mr. Huggs committed an unlawful act not amounting to a felony. At trial, the judge said he can either prove that beyond a reasonable doubt or else there are these alternative bases for conviction as well. And spelling out those alternative bases for conviction as well, we don't know what the effect upon the petite jury was. The fact that there was a constructive amendment at trial in and of itself, we would suggest, violated Mr. Huggs' Fifth Amendment grand jury right. Let's assume you're correct that the Court was in error in giving Construction 14 that was offered by both sides. Discuss the plain error rule with us. What was the impact? Well, the plain error rule says that it has to have affected Mr. Huggs' substantial rights. And I'm sorry if I don't have all the wording right off the top of my head. I would refer to my brief for that. But Mr. Huggs' substantial rights include the right to a grand jury, the Fifth Amendment constitutional right to a grand jury. And that includes the right to have all of the charges brought against him at trial reviewed and approved by the grand jury. The only part of this case that we know for a fact had been reviewed and approved by the grand jury is that which is contained in the indictment. The unlawful, the unlawful killing of another causes a result of an unlawful act not amounting to a felony. The additional language that was used at trial in the jury instruction was not included. And, Your Honor, I see I have about 50 seconds left. I would preserve that for rebuttal unless there are any other questions. Thank you. Good morning. If it pleases the court, counsel. My name is Klaus Richter. I'm with the U.S. Attorney's Office from the District of Montana. I'm the assistant from Billings. I was trial counsel in this case also. Basically, the past law on involuntary manslaughter, we've cited it within our brief, so I don't want to go through it in too much detail. But basically speaking, the past law in involuntary manslaughter cases basically states that a court needs to define what gross negligence is. And, again, the government needs to prove gross negligence in an involuntary manslaughter case. That's the party case from 1966, and more recently in the Ninth Circuit, the Shortman case in 1996. So basically there was absolutely no variance whatsoever in these jury instructions. The defendant was charged with involuntary manslaughter. One of the elements that was alleged was the unlawful act, not a monetary felony. However, on top of that, the United States still needed to prove the gross negligence, and the Ninth Circuit jury instruction basically that was given by the court basically in the first element goes on and defines what gross negligence is. It's wanton or reckless disregard for human life. Past cases have held that that's not given, that's error. So the court was basically following what the past law in these type of cases had said. Now, I said earlier this was no – absolutely no variance. We submitted that in our brief, too, assuming for purposes of this argument that there was a variance. Well, let me ask you this. Aren't there three different ways to prove manslaughter? Yes, there are, Your Honor. The indictment charged only one way. It did, Your Honor. And the jury was told that there were three ways that applied in this case. Yes, Your Honor. Doesn't that sound like a variance? It – well, again, the law was explained through the jury instruction, and that's what the recommended jury instruction says. Yes, there are the unlawful act or an act done in an unlawful manner or with wanton and reckless disregard for human life. So, actually, there are three ways to look at it, but the bottom line is the court still needs to instruct and define what gross negligence is. And this is what the court was doing. So there is absolutely no change. That may be so, but your indictment specifically specifies commission of an unlawful act. Isn't it true that having heard these instructions, the jury may get the impression that one of the other two routes is sufficient to convict? There may not actually be a jury determination that there had been the commission of the unlawful act, given that the instruction gives these other alternatives. And going with the variance argument, actually, by giving those jury instructions, the court, as opposed to what the appellant is arguing, did not lessen the government's burden. It actually increased the burden. So basically, Your Honor, yes, the unlawful act being DUI, being driving while intoxicated, that was easy to prove, and it was proven. By defining then gross negligence and basically addressing the other two prongs of that statute, the government's burden was actually increased. There being absolutely no effect or no detriment to the defendant by that. I think I'm missing something. How was it increased? What did the government have to prove in addition because of the instruction that included two phrases that begin with the word or? Well, I guess, Your Honor, that is my basic point. The government's burden was not lessened. But it may have been. Suppose the jury didn't find the commission of an unlawful act but decided there was a lawful act committed with wanton and reckless disregard to human life. The United States had to prove that anyway to prove gross negligence. Wait a minute. You had to prove unlawful act. And my question is, suppose the jury decided there wasn't an unlawful act committed. Instead, there was this other alternative and under the instruction that appears to be sufficient. So how can you say the burden is just the same if you don't have to prove an unlawful act under that scenario and under the indictment you do? Well, the unlawful act, again, the way the indictment reads, the way the proof at trial went and so on, the defendant was proving to have driven while being intoxicated. Now, that may have something. But to talk about the proof at trial may tell us there's no prejudice. But on the first step, in terms of whether this instruction actually made it harder for the government, I just don't understand how it possibly could be said that the It seems to be on the face of it that defendant's complaint is valid, that there is this alternative possibility that at least theoretically the jury could have reached a verdict of guilty without ever finding the unlawful act, which is the premise of the indictment. So if that's theoretically possible, then you'd better move to why it was not the case here and why there was no prejudice here. Absolutely no prejudice. The defendant was charged with involuntary manslaughter. On a certain date, at a certain time, at a certain place. And that's all alleged in the indictment. That's what was proven, that he, because of his actions, caused the death, directly caused the death of another person. This is what the involuntary manslaughter charge said. And this is what was proven at trial. There was absolutely no different charge involved. There were no new charges involved. And as the variance concept is defined, basically the involuntary manslaughter was charged. Involuntary manslaughter was proven. There was not a different charge involved whatsoever. It wasn't different, but the indictment is specific in electing one of the three varying routes to a conclusion of involuntary manslaughter. And so I think the question you have to deal with is, based on the evidence submitted to the jury, is it evident that the jury's conclusion had to have been premised upon the finding of the unlawful act, because that's what the indictment is based on? I, of course, can't speak for the jury, and I understand the Court's question, but at trial, and contrary to the allegations of appellant, there was proof at trial that the defendant was intoxicated. I understand my question. I'm really not trying to be hostile here, because as I read it, it seems on the face of it, the point of it is he's drunk, he's intoxicated, so you've got an unlawful act. And what I really need to hear you focus on is the proof for that and the reason that we can safely infer that the jury didn't go the other way. There wasn't a combination of ingredients or a set of evidence that makes it plausible that the jury didn't find an unlawful act, but instead decided to convict on one of the other routes. Okay. And I hope I'm answering the question that there was evidence introduced of the defendant's blood alcohol content. There was evidence introduced that he was driving the vehicle. There was a highway patrol person that testified to that. Yes, it was. And that the defendant was the driver and that the death of his passenger was directly caused by the accident, which was, again, caused by the defendant driving while being intoxicated. The Court also instructed in one of the instructions, I do not know which number it is, that driving while being under the influence is an offense. So reading those instructions as a whole, certainly that aspect was more than sufficiently proven. There is, as I've stated, and for purposes of this argument, the waiver of the appeal, the invited error is kind of harsh. The United States certainly doesn't have any problem with going under the plain error doctrine. But, again, there's absolutely been no prejudice to the defendant by this case. There was another issue addressed in this case, the DNA issue. However, I'll submit or I'll rely on the United States' brief to those arguments. If there's no further questions on this particular aspect, I respectfully submit that to the Court. Thank you. In your Honors, there's one final issue that I would just like to point out in response to Mr. Victor's argument. That being, Mr. Victor argued today and also in his reply brief that the district court was obligated to read the other alternative bases for conviction because the district court was obligated to describe gross negligence to the petite jury. In fact, the government was obligated to include that in its indictment, and the government was obligated to bring that to the grand jury under the Fifth Amendment. Accordingly, Your Honor, we submit this case to the Court, stressing the fact that a constructive amendment did occur in this case, and Mr. Huggs' Fifth Amendment right was violated as a result. Thank you. Thank you, Your Honor. We thank both counsel. The case is submitted.
judges: Browning, Alarcon, Clifton